TACKETT v. CUNNINGHAM et al.

No. 9646.

Court of Civil Appeals of Texas. San Antonio.

Feb. 12, 1936.

Rehearing Denied March 18, 1936.

Sidney P. Chandler, of Corpus Christi, for plaintiff in error.

H. S. Bonham and J. A. Wood, both of Corpus Christi, for defendants in error.

SMITH, Chief Justice.

R. O. Tackett and J. B. and W. S. Cunningham, a partnership, operated a cotton business, with offices at Taft and Corpus Christi, under the trade-name of "Tackett and Cunningham, Cotton."

On December 14, 1931, the partnership was dissolved by mutual consent, evidenced by four certain contemporaneous written instruments, including a promissory note for $1,900, executed by Tackett, in behalf of the partnership, and by the two Cunninghams, payable to Tackett, individually, on or before December 14, 1932.

The partnership had an existing deposit account in the City National Bank of Corpus Christi, then in liquidation, for $1,900 (the amount of said note), and it was provided in said note, as well as in a contemporaneous collateral written agreement, that, as dividends were thereafter paid on the deposit account, they should be credited on the note. It was further provided in the collateral agreement that, in the event the bank failed to pay the full amount of the deposit account, then each member of the partnership should pay, on demand, his one-third of the deficiency so arising on the note. During the ensuing year, and therefore prior to the maturity of the note, the defunct bank paid a part of the firm's deposit account, which payment, being credited on the note, left a substantial balance due thereon. At its maturity date the Cunninghams paid the accrued interest on the note, but subsequently, upon their default in the payment of the principal,

Tackett brought this action against them for their proportion of that balance.

The Cunninghams answered, alleging, in effect, that under the terms of the collateral agreements they were not obligated to pay the note until the liquidation of the bank was completed, and all dividends accruing upon the firm's deposit account were collected and credited upon the note, whereby the final liability of the Cunninghams thereon would be determined; that the bank was still in process of liquidation, and further dividends, in undetermined amounts, were yet to be paid; that Tackett had orally agreed and promised, and all parties understood, at the time the note was executed, that, if the liquidation of the bank was incomplete, and further dividends were due the partnership, at the recited maturity of the note, Tackett would then carry, continue, or extend the note, until that contingency occurred. Upon those allegations, as well as others of like import, the Cunninghams contended, in their pleading, that the suit was prematurely commenced against them, and prayed that it be dismissed, which the court ordered done, without prejudice, however, to Tackett's right to sue again when his cause of action, if any, accrued. Tackett has appealed. The parties will be referred to as appellant and appellees.

Appellees alleged that the note sued on was but one of four written agreements entered into, executed, and delivered at the same time, concerning and effectuating the dissolution of the partnership; that each of those agreements was a material element of the act and contract of dissolution, and all together constituted that contract, and were intended to, and did by their own terms, form the one contract, and should therefore be considered and given effect in determining the rights and liabilities of the respective parties thereto; that there was a conflict in the provisions of the note sued on, creating an ambiguity therein. Appellees also alleged, generally, that appellant procured the execution of the note through fraudulent oral representations and promises.

The parties each demurred, generally and specially, to the other's pleadings, but it does not appear that those demurrers were urged or ruled upon below, wherefore they will be treated here as if waived by the parties. We think that in this situation appellees' pleadings were suf-

ficient to let in proof, both written and oral,· in support of those pleadings, setting up ambiguity in the indorsement on the face of the note. Certainly it was proper, under those pleadings, to admit and give effect to the contemporaneous written collateral contracts, executed, as the note was, as parts and parcels of the dissolution agreement; and to admit, as well, parol proof to show the note and contracts were executed at the same time, and as parts of, and constituting, the whole agreement. Being so in evidence, the contracts and· note were properly considered together, as making up an entire agreement.

One of the four written agreements provided, only, that the partnership was thereby dissolved "except for the purpose of ·final settlement and liquidation of the business thereof, said final settlement to be made· of this date and each partner's responsibility cease of this date, only for the purpose of final settlement and liquidation, after which final settlement said partnership to wholly cease and determine."

Another of those agreements provided, simply, that the partnership "is on this date dissolved by mutual agreement, and R. O. Tackett is hereby designated to liquidate and make all final settlement of said partnership."

As those two agreements seem to be immaterial to the questions raised in this appeal, they will not be further discussed in this opinion. The remaining agreement only, other than the note sued on, will be hereinafter referred to as the "collateral" agreement.

The note sued on was in the usual form, except that it bore upon its face this indorsement: "As Tackett & Cunningham, Cotton City Nat'l Bank account is liquidated said funds to be applied on payment of this note."

▇▇ The trial judge filed quite voluminous findings of fact, and no statement of facts was brought up with the record. That being the case, it will be conclusively presumed by this court that every finding, in so far as founded upon parol evidence, was supported by sufficient evidence, and every such finding must be given its full legal effect upon this appeal, if supported by the pleadings. This presumption, however, does not extend to findings involving an interpretation of the written documents in evidence and appended to the findings. Those documents being before this Court for consideration, it is for this court to interpret, construe, and give effect to them, without regard to the trial judge's findings or conclusions thereon. It should be added that, in the absence of a statement of facts, no fact other than those specifically included in the findings of the trial court will be presumed or implied. The judgment must stand, if at all, solely upon those specific findings.

▇ We will first consider the question of the alleged ambiguity in the provisions of the note in suit. It is obvious from the record that that note was substituted for an existing demand note for a like amount. The allegation as to ambiguity was that the note "was prepared and executed subsequent to and as a part of the said written agreement, and that the notation upon said note is ambiguous." The "notation upon said note," as shown above, was, simply, that "as (the partnership account in the named bank) is liquidated said funds to be applied on payment of this note." It is obvious that the language of' the notation is, within itself, plain and simple, and therefore unambiguous, but was nevertheless subject to a more complete explanation of what the bank account was, which explanation could properly be shown by the collateral agreement. That agreement, being full and complete within itself, could not properly be enlarged or modified by parol evidence.

Going to the pertinent provision in the collateral contract, and combining that provision with the related provision in the note, it appears therefrom that dividends from the defunct bank were to be credited upon the note, and, if those dividends were not sufficient to fully liquidate the note, then the three partners were each to pay, on demand of Tackett, his proportion of the deficiency. Now, in this connection, the trial court construed this latter provision in the collateral agreement to be a stipulation that the note was not to become due.or payable until the bank was fully liquidated and all the accruable dividends therefrom were collected and credited upon the note. But we do not so construe it. Certainly no such stipulation was expressed, and certainly the remote implication that the payment of the obligation was to be postponed until final liquidation of the bank cannot be given effect against the specific stipulation in the note that the obligation should mature on a date certain. Nor could oral evidence properly be admitted to reconcile any conflict between the

note and collateral agreement, in the absence of allegation that the two writings were inconsistent, or in conflict, or that one or the other was executed through fraud, accident, or mistake.

However, the court did admit evidence upon the issue, and resolved it, in effect, against appellees' contention, by an express finding that in their final negotiations of the partnership affairs the parties decided it would be "necessary" to fix a due date in the note (which was substituted for an existing demand note); that they agreed that the bank would be completely liquidated within the period of the ensuing year; that upon that agreement the note was made to mature at or before the expiration of that period, to wit, December 14, 1932, and that thereupon appellees "executed and delivered" the note, bearing that agreed maturity date, to Tackett. That finding, within itself, is conclusive against appellees' contention and the court's finding, that the collateral agreement provided, by its terms, that the note was not to become due or payable until final liquidation of the bank.

It is true the court further found as a fact, upon parol evidence, that it was agreed between the parties, and Tackett promised and agreed, that, if the bank was not fully liquidated by the time the note matured according to its due date, he would carry or extend it until that contingency happened. This finding cannot be given effect; because, first, it is nullified by the specific finding that the due date was deliberately inserted in the note, after the parties had fully considered and settled the effect of the very contingency which appellees now contend must control the time of the maturity of the note, and thereby nullify the express provision so deliberately inserted in that obligation; and, second, under familiar rules of established law, parol evidence, even though admitted without objection, cannot be given effect to vary or destroy, as attempted in this case, the plain provisions of a written obligation.

The trial court further found, and gave effect to the finding, that the maturity date was "inserted in said note solely because of the (oral) promise and agreement of" appellant that, if the liquidation of the bank was not complete by that date, he would then "extend and continue to carry the note until the terms and conditions set forth in said written (collateral) agreement had been fulfilled."

This finding does not warrant the judgment appealed from, first, because an oral promise or agreement cannot be engrafted upon, and thereby vary or destroy the terms of, a written obligation, in the absence of efficient allegations and sufficient proof of fraud, accident, or mistake in execution; and, second, because appellant was not obligated, by the terms of the collateral agreement or the note, to "extend and continue to carry the note" beyond its recited maturity date.

So did the trial court find, in general terms, upon the issue of fraud, that to allow appellant to disregard his "oral promises"—to extend or carry the note—"would be to allow this perpetration of a fraud upon" appellees. But the legal effect of a failure to perform a promise or agreement does not amount to actionable fraud, even by giving effect to all the court's findings in the case upon parol evidence tending to vary the terms of the written obligation. It might, under certain circumstances and conditions, justify an action for damages for breach of contract, but no more than that.

The court further found that Tackett orally represented and agreed that the collateral agreement controlled the note, and is thereby estopped to assert the reverse, that the note controls the collateral agreement. That finding does not affect the merits of the case, for various reasons too obvious to require extended discussion here. The note and collateral agreement are not repugnant to each other, and appellees did not allege they were. The alleged representation was upon a pure question of law, the interpretation of which was equally available to both parties. And, if the statement or promise charged to appellant, if enforced, would have the effect of varying the terms of the note (which is not the case), it could not be given that effect, since it rests entirely in parol.

The question of a conditional delivery of the note, or of whether the note was delivered with the intention of the parties that it should not become effective until the happening of a particular contingency, is not in the case, either under the pleadings or the findings of the trial judge. On the contrary, the findings negative conditional delivery, for it there appears that the maturity date was first considered and discussed by the parties, who agreed that the contingency of the final liquidation of the bank would occur by December 14,

1932, and upon that agreement, so arrived at by all the parties, appellant inserted the maturity date agreed upon, and thereupon appellees deliberately executed and delivered the obligation as so written.

■ It is perfectly obvious that the parol evidence and the court's findings thereon— to the effect ·that appellant promised and agreed, and all the parties "understood," that if the liquidation of the bank was incomplete at the maturity date fixed in the note, appellant would carry or extend the note until that contingency actually happened—were in flagrant violation of the rule which prohibits the alteration by parol evidence, of the terms of a valid written contract. 17 Tex.Jur. p. 791, § 352; Jones on Evidence (3d Ed.) § 494.

■ Appellees contend that, in the absence of a statement of facts, appellant cannot complain of the findings of fact based upon parol evidence, which, it will be presumed, was admitted without objection; that in such case this court is bound by those findings, since their verity is fully presumed. This contention goes amiss from the true mark, however. The question here is not one of the admission of evidence merely, but is purely one of substantive law, for, whatever that testimony was, it is obvious from the record, and from recitations in the findings, that the court gave effect to parol testimony for the purpose of altering or destroying a plain, material term of a written obligation, deliberately entered into. The law in this state is that the rule which bans such testimony is not only one of evidence or procedure, but is one of substantive law, as well. 17 Tex.Jur. p. 793, § 353; Texarkana & Ft. S. R. Co. v. Brass (Tex.Com. App.) 260 S.W. 828.

■ Such evidence, regardless of the circumstances of its admission, is without probative force, and can be given no legal effect to avoid or change the plain provisions of the note here sued on, and therefore will not support either the verdict of a jury or findings of a trial court or of an appellate court. 17 Tex.Jur. p. 793, § 353; Henry v. Phillips, 105 Tex. 459, 151 S.W. 533; Austin Bros. v. Patton (Tex.Com. App.) 294 S.W. 537. But, aside from these well-settled rules, the findings of the trial court which by their own terms are based upon parol testimony show that the maturity date fixed in the note was agreed to by the parties, in view of and after fully considering and allowing for the very contingency appellees now urge as a reason for indefinitely postponing that maturity. So that, under the parol testimony, as well as under the rule of law which prohibits the use of such testimony as a means of varying the terms of written instruments, the trial court erred in not rendering judgment for appellant upon the note in suit.

The judgment will be reversed, and, as the case was fully developed below, judgment will be here rendered that appellant recover of appellees, jointly and severally, the sum of $981.12, with interest thereon at the rate of 8 per cent. until paid, together with all costs of the litigation; without prejudice, however, to the right of appellees to require appellant to account to them for such other dividends, if any, as the bank has paid or may pay upon the partnership account.

Reversed and rendered.