**STRUT CAM DIMENSIONS, INC., Appellant,**

v.

**Joseph H. SUTTON, Appellee.**

**No. 13–93–651–CV.**

Court of Appeals of Texas, Corpus Christi.

Oct. 6, 1994.

Opinion Granting Rehearing and Dismissing Appeal Feb. 9, 1995.

---

Moises V. Vela, Harlingen, and Larry Warner, Brownsville, for appellant.

Robert E. Scott, Edward P. Watt, Austin, for appellee.

## OPINION

PER CURIAM.

The transcript in this case includes a post-answer default judgment that neither addresses the defendants' counterclaims nor contains a Mother Hubbard clause denying all relief not expressly granted. Whether we have jurisdiction over this matter depends on the applicability of the *Aldridge* presumption to post-answer default judgments. *See North East Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex.1966) (discussing circumstances under which a judgment will be presumed final and appealable notwithstanding the omission of a Mother Hubbard clause); *see also Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex.1979) (defining post-answer default as failure to appear at trial after filing answer).

The Dallas Court of Appeals, the only court to have specifically addressed this issue, has extended the *Aldridge* presumption of finality to post-answer default judgments. *Thomas v. Dubovy–Longo*, 786 S.W.2d 506, 507 (Tex.App.—Dallas 1990, writ denied); *see also Schnitzius v. Koons*, 813 S.W.2d 213, 216 (Tex.App.—Dallas 1991, no writ) (citing *Thomas* with approval). The *Thomas* court based its decision on language from *Aldridge* that applied the presumption of finality to cases *"regularly set* for a conventional trial on the merits." *Thomas*, 786 S.W.2d at 507 (quoting from *Aldridge*, 400 S.W.2d at 897) (emphasis supplied).

Since *Aldridge*, however, the supreme court has backed away from this language; the court has shifted focus from whether the dispute was set for trial to whether a *conventional* trial was actually conducted. *See, e.g., Martinez v. Humble Sand & Gravel, Inc.*, 875 S.W.2d 311, 312 (Tex.1994) ("After a *conventional* trial on the merits, even absent clear language, the appellate court may draw the inference the judgment was meant to be final.") (emphasis supplied); *Mafrige v. Ross*, 866 S.W.2d 590, 592 (Tex.1993) ("the Mother Hubbard language from [*Aldridge* ] was limited to conventional trial on the merits"); *Houston Health Clubs v. First Court of Appeals*, 722 S.W.2d 692, 693 (Tex.1986) ("Following conventional trial on the merits, the judgment is presumed final."); *Teer v. Dud-*

*dlesten,* 664 S.W.2d 702, 704 (Tex.1984) (disapproving application of *Aldridge* presumption absent "a conventional trial regularly set for trial on the merits"); *accord Walker v. Sharpe,* 807 S.W.2d 442, 445 (Tex.App.—Corpus Christi 1991, no writ) ("In determining whether the judgment is final, different presumptions apply depending on whether the judgment follows a conventional trial on the merits or results from default or summary proceedings. Following a conventional trial on the merits, the judgment is presumed final.")

Because the supreme court no longer emphasizes trial setting as the act that attaches the presumption of finality, we must consider whether a post-answer default involves a conventional trial. In *Stoner,* the supreme court concluded that a post-answer default is not "a judgment upon trial ... [but] a form of 'judgment by default.'" *Stoner,* 578 S.W.2d at 682 (quoting *Mullen v. Roberts,* 423 S.W.2d 576, 579 (Tex.1968)). Significantly, the *Aldridge* presumption does not apply to default judgments. *Houston Health Clubs,* 722 S.W.2d at 692.

Having considered the *Thomas* opinion of the Dallas Court of Appeals, we conclude that the presumption of finality does not apply to post-answer default judgments. We agree with the Dallas court that the nondefaulting party in a post-answer default must present evidence "*as in* a judgment upon a trial." *Thomas,* 786 S.W.2d at 507 (quoting *Stoner,* 578 S.W.2d at 682) (emphasis supplied). Nevertheless, post-answer default judgments do not follow a *conventional* trial on the merits because such judgments are not, in any event, "a judgment upon trial." *Stoner,* 578 S.W.2d at 682; *c.f. Thomas,* 786 S.W.2d at 507–08 (Enoch, C.J., concurring) (noting that the *Aldridge* presumption "should not balance upon so tenuous a fulcrum as whether the case was *regularly set* for trial" but then focussing on whether there was an "actual" trial rather than a conventional trial on the merits).

The post-answer default judgment in the instant case neither denies the defendants' counterclaims nor contains a Mother Hubbard clause. Absent the *Aldridge* presumption of finality, therefore, this judgment remains interlocutory until severed from, or modified to address, the defendants' counterclaims. Accordingly, we have no jurisdiction over this appeal.

## OPINION ON MOTION FOR REHEARING

In our original per curiam opinion, we concluded that this post-answer default judgment was not final because it did not expressly dispose of the counter-actions or contain the phrase "all relief not expressly granted is denied." We dismissed the appeal for want of jurisdiction because the judgment was not final. Appellee's motion for rehearing raises the additional argument that the judgment is final because it disposes of the defendants' counter-actions by necessary implication. We agree, hold the judgment was final, but nevertheless dismiss the appeal.

■ This case involves a joint venture agreement to purchase ostriches in Africa and raise them in Costa Rica. Asserting breach of contract, fraud, conversion, and violations of the DTPA, Joseph Sutton sued Albert Durham and Durham's company, Strut–Cam Dimensions, Inc. Sutton later expanded his suit to include Durham's business partner, Brian Vermaak. The defendants answered and filed counter-actions seeking specific performance of the joint venture agreement and other affirmative relief based on their interpretation of the contract. The affirmative relief sought by the defendants was predicated on the same contract sued on by the plaintiff.

The trial court rendered a default judgment in favor of Sutton when the defendants failed to appear at trial. The judgment did not mention defendant's counter actions and did not include the language, "All relief not expressly granted is denied."

The trial court granted judgment for the plaintiff based expressly on the plaintiff's interpretation of the joint venture agreement. By this judgment, the trial court necessarily denied the relief requested in the defendants' counter-actions; to do otherwise would leave pending an action seeking an irreconcilable interpretation of the same agreement that was interpreted by the de-

fault judgment. Accordingly, the defendants' counter-actions were disposed of by necessary implication. *See Walker v. Sharpe*, 807 S.W.2d 442, 445 (Tex.App.—Corpus Christi 1991, no writ). The judgment was final.

Because the post-answer default judgment was final, the appellate time table began to run from the date that the judgment was signed. Allowing for the defendants' motion for new trial, the transcript was due to be filed with this court on June 22, 1994. The transcript was not filed until the fifth of August. The court of appeals may grant an extension to file the transcript only if the appellant requests an extension in a motion filed not later than fifteen days after the deadline. TEX.R.APP.P. 54(c); *B.D. Click Co. v. Safari Drilling Corp.*, 638 S.W.2d 860, 860 (Tex.1982). We have received no such request from the defendants. The rules further provide that the appellate court lacks "authority to consider a late filed transcript" although the failure to file the transcript does "not affect the jurisdiction of the court." TEX.R.APP.P. 54(a); *Office of Pub. Util. v. Public Util. Comm'n of Tex.*, 878 S.W.2d 598, 599 (Tex.1994). As a result, we have jurisdiction over this case but no authority to consider the transcript.

The motion for rehearing is granted and the appeal is dismissed.